IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| ATLANTIC COAST PIPELINE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>11.18 ACRES, MORE OR LESS, IN AUGUSTA COUNTY, VIRGINIA, LOCATED ON PARCEL IDENTIFICATION NO. 40-11, IDENTIFIED AS TRACT ONE (TAX MAP NO. 40-11) IN INSTRUMENT #180002522; LOCATED ON PARCEL IDENTIFICATION NO. 40-13, IDENTIFIED AS TRACT TWO (TAX MAP NO. 40-13), IN INSTRUMENT #180002522;<br><br>and<br><br>BONNIE V. RALSTON, TRUSTEE OF THE BONNIE V. RALSTON TRUST AGREEMENT DATED JUNE 13, 2009,<br><br>and<br><br>CARSON R. RALSTON, TRUSTEE OF THE BONNIE V. RALSTON TRUST AGREEMENT DATED JUNE 13, 2009,<br><br>    Defendants. | Civil Action No.:<br>5:18cv60 |

## MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF WILLIAM C. HARVEY, II

The Plaintiff, Atlantic Coast Pipeline, LLC ("ACP"), has identified William C. Harvey, II as an expert real estate appraiser in this case to testify as to his opinions of the value of the subject properties and the amount of just compensation owed to the Defendants. In reaching his opinions, Mr. Harvey fails to accurately identify and value the property taken by ACP, making his opinions on value unreliable. Moreover, Mr. Harvey purports to rely on "market evidence" in supporting his conclusion that the subject properties suffer a diminution in value as a result of ACP's taking, but the "evidence" he cites is methodically flawed and inadmissibly unreliable.

Mr. Harvey's appraisal report does not comply with the Uniform Standards of Professional Appraisal Practice ("USPAP"), nor does it meet the standard set forth in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, and therefore this Court should grant the Defendants' motion, and exclude Mr. Harvey from testifying at the just compensation trial in this matter.

## I. Background

This is an eminent domain case involving ACP's taking of certain property of the Defendants, Bonnie V. Ralston, Trustee and Carson R. Ralston, Trustee, for the construction and operation of a high-pressure natural gas transmission pipeline. The jury trial on just compensation is scheduled for May 5-7, 2020. Pursuant to the Court's scheduling order, and the party's Rule 26(f) joint reports, the Plaintiff identified its expert witnesses on September 17, 2018, and provided a written appraisal report from Mr. Harvey as required under Fed. R. Civ. P. 26(a)(2)(B). On May 2, 2019, without any change to the taking, ACP produced its Supplemental Expert Disclosure containing Mr. Harvey's revised opinion and appraisal. On May 14, 2019, Plaintiff filed its Second Amended Complaint in Condemnation, condemning 11.90 acres of land, Second Amended Complaint, (ECF No. 30),[1] after which the trial in this matter was continued to May of 2020. Order (ECF No. 34). On July 31, 2019, ACP produced its Second Supplemental Expert Disclosure containing Mr. Harvey's new opinion and appraisal pursuant to ACP's Second Amended Complaint in Condemnation (Attached hereto as **Exhibit A**). On November 6, 2019, Plaintiff filed its Third Amended Complaint in Condemnation, condemning 11.18 acres of land. Third Amended Complaint (ECF No. 40). On November 27, 2019, ACP produced its Third Supplemental Expert Disclosure containing Mr. Harvey's new opinion and

---

[1] ACP filed its first Complaint in Condemnation in this Civil Action on April 4, 2018 for 9.71 acres. Complaint (ECF No. 1). ACP then filed its Amended Complaint in Condemnation on April 26, 2018 for 9.71 Acres. Amended Complaint (ECF No. 7). Mr. Harvey's initial opinion and appraisal was disclosed under this Amended Complaint. The trial for this Case was originally set for August 19-21, 2019. Order (ECF No. 11).

appraisal pursuant to ACP's Third Amended Complaint in Condemnation (Attached hereto as **Exhibit B**). On January 29, 2020, Defendants deposed Mr. Harvey on his opinions for trial. On February 4, 2020, one day before of the close of discovery, and without any change to the taking, ACP produced its Fourth Supplemental Expert Disclosure with yet another appraisal by Mr. Harvey (Attached hereto as **Exhibit C**). Mr. Harvey's revised appraisal report was attached to the disclosure as "Exhibit A" to said disclosure.

Mr. Harvey's fourth appraisal report—which sets forth his opinions to be offered at trial—is dated February 4, 2020, with an effective date of valuation of April 4, 2018 – the date of the Complaint in Condemnation in this matter. See Complaint (ECF No. 1); cover page to "Exhibit A" of **Exhibit C**. His report claims compliance with Fed. R. Civ. P. 26(a)(2) and USPAP. See **Exhibit C** at "Exhibit A", 1. However, Mr. Harvey's fourth appraisal report contains critical flaws which do not meet the Daubert standard for admissibility of expert opinions. As a result, Mr. Harvey's report, testimony, and opinions should be excluded from evidence at trial, and the Defendants' motion granted.

**II.    ARGUMENT**

Mr. Harvey's opinions are not sufficiently reliable to be admitted at trial. Generally, expert opinions are admissible if they are based on specialized knowledge or experience, will help the trier of fact to understand evidence or determine a fact at issue; are based upon sufficient facts or data; are the product of a reliable principles or methods; and if the expert has reliably applied the principles and methods to the facts of the case. See Daubert v. Merrell Dow Pharma., Inc., 509 U.S. 579, 592-93 (1993). The Fourth Circuit has ruled that it is "a district court's gatekeeping responsibility to 'ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th

Cir. 2017) (quoting Daubert, 509 U.S. at 597). This "is particularly pronounced in condemnation proceedings under Rule 71.1." United States v. 33.92356 Acres, 585 F.3d 1, 8 (1st Cir. 2009). "[T]he sweeping language of the final sentence of [Rule 71.1] discloses a clear intent to give the district judge a role in condemnation proceedings much broader than he occupies in a conventional jury trial. It is for him to decide 'all issues' other than the precise issue of the amount of compensation to be awarded." United States v. Reynolds, 397 U.S. 14, 20 (1970).

To be admissible, the expert opinion or testimony must be not only relevant, but also reliable. See Daubert, 509 U.S. at 597-99. If an expert's opinion is unreliable, then it is inadmissible at trial. Nease, 848 F.3d at 229. In considering the reliability of an expert's opinions, courts often look to a number of non-exclusive factors, including: whether the theory or technique has been or can be tested; whether the theory or technique has been peer reviewed; the risk of potential error in the theory or technique; and whether the theory or technique is generally accepted. See Daubert 509 U.S. 592-94; Nease, 848 F.3d at 229; Lee v. City of Richmond, 3:12-cv-471, 2014 WL 5092715 at *3 (E.D. Va. Sept. 30, 2014). Courts also often look at whether an expert has accounted for obvious alternative explanations for their opinions. Roche v. Lincoln Prop. Co., 278 F.Supp.2d 744, 749 (E.D. Va. 2003). See also Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) (applying the Daubert analysis to expert testimony beyond that which is purely scientific in nature). Mr. Harvey did not value the property ACP is taking in this case, and has used unreliably flawed methodology for determining the impact to the Defendants' remaining property caused by ACP's taking. These errors render Mr. Harvey's opinions of value and—by extension—just compensation unreliable and inadmissible.

### A. Mr. Harvey Did Not Value the Property taken by ACP

Despite purporting to rely upon ACP's Third Amended Complaint in order to determine what property was being taken, Mr. Harvey failed to actually value the rights being taken by ACP from the Defendants. This failure, which goes to the heart of his opinions in this case, renders his testimony unreliable and therefore inadmissible. Specifically, the Third and Fourth Supplemental Appraisal Reports prepared by Mr. Harvey include a recitation of the rights being taken by ACP. See **Exhibit B** at "Exhibit A", 15; **Exhibit C** at "Exhibit A", 15. Although these reports contain a specific reference to the description of the taking as found in the Third Amended Complaint filed by ACP in this case, the actual language used by Mr. Harvey in describing the property being taken in his Third and Fourth Supplemental Reports is not contained in the Third Amended Complaint. Compare **Exhibit B** at "Exhibit A", 15; **Exhibit C** at "Exhibit A", 15 to Third Amended Complaint (ECF No. 40), at ¶ 20.

In particular, Mr. Harvey's Third and Fourth Supplemental Reports state that "the rights to be granted to ACP in connection with the permanent easements to be taken on the Subject Larger Parcel include the right . . . [o]f ingress and egress to and from and through the easements." **Exhibit B** at "Exhibit A", 15; **Exhibit C** at "Exhibit A", 15. Both the Third and Fourth Supplemental Reports include a footnote to this description of rights which references the Third Amended Complaint. **Exhibit B** at "Exhibit A", 15; **Exhibit C** at "Exhibit A", 15; Deposition Transcript of William C. Harvey, Jan. 29, 2020 (**Exhibit D**) at 95:25-96:13. In his prior appraisal reports, Mr. Harvey included the same language in describing the rights being taken, though the earlier reports referenced the Amended Complaint and Second Amended Complaint. See **Exhibit B**, "Exhibit A" at 15; **Exhibit A**, "Exhibit A" at 15.

During his deposition, Mr. Harvey testified that he appraised ACP's right to travel "through or across the Ralston property." **Exhibit D** at 103:2-8. However, the right to cross the remainder of the Defendants' property in order to have ingress and egress to and from the permanent and temporary easements which are being condemned in this matter is not a right which ACP is taking via the Third Amended Complaint in this case. At his deposition, Mr. Harvey only further muddled his description of the property being taken. For instance, after testifying that the information contained in his Third Supplemental Appraisal Report was "taken from the third amended complaint," Id. at 95:25-96:4, he subsequently admitted that the language in his report is not actually in the Third Amended Complaint. Id. at 97:6-8 ("So it's, you know – it's – I'm paraphrasing but not quoting verbatim").

In the Second Amended Complaint—as in its prior Complaints—ACP includes among the rights being taken "the right of ingress and egress *to and from and through the Easements*." Second Amended Complaint (ECF No. 30), at ¶ 21 (emphasis added); see also Complaint (ECF No. 1), ¶ 21; Amended Complaint (ECF No. 7), ¶ 21. However, the Third Amended Complaint, which contains the language which will be the subject of the upcoming just compensation trial, specifically changed that description to "the right of ingress and egress *through the Easements*." Third Amended Complaint (ECF No. 40), at ¶ 20 (emphasis added). Mr. Harvey's Third and Fourth Supplemental Reports, both of which were issued after the filing of the Third Amended Complaint and claim to reflect the rights taken in the Third Amended Complaint, do not reflect this change in the rights being taken, but instead purport to appraise the right "of ingress and egress to and from and through the easements." Because Mr. Harvey did not properly describe the rights being taken, his opinions of value and just compensation are unreliable and should be excluded from the just compensation trial in this matter.

When asked at his deposition to clarify if he was appraising "ACP's acquisition of the right of ingress and egress to and from the easement," Mr. Harvey responded by correcting the question: "Through the easement." **Exhibit D** at 97:11-15. Yet moments later, he specifically cited paragraph 19 of the Third Amended Complaint, which includes reference to "authorized entry onto the property including restoration." Id. at 98:5-6. Asked again whether he appraised ACP's acquisition of the right of ingress and egress to and from the easements, Mr. Harvey answered: "Only for the purposes of restoration." Id. at 98:11-14; see also id. at 98:20-25 (confirming that his testimony is that the taking includes the right of ingress to and from the easements only for the purpose of restoration).

Subsequently, however, Mr. Harvey explained that, in his opinion, "restoration" included the actual construction of the pipeline and other appurtenances on the Defendants' property, testifying that the transportation of pipe, vehicles, machinery, persons, equipment or other materials "would be a form of restoration." Id. at 100:21-24. He then testified that, with regard to the right of ingress and egress to and from and through the easements, "it's not limited to restoration activity only, just so the record is clear." Id. at 101:1-4.

Mr. Harvey's deposition testimony does make "the record . . . clear" but perhaps not in the way he intended. What is clear is that Mr. Harvey appraised property which is no longer part of the taking in this case—specifically, the right of ingress and egress to and from the permanent and temporary easements. Whereas in the Complaint, Amended Complaint and Second Amended Complaint, ACP clearly stated that it was seeking to take the right of "ingress and egress to and from and through the easements," the Third Amended Complaint, which defines the rights for which the jury will be asked to award just compensation, specifically eliminates the taking of rights of ingress and egress "to and from" the easements, in favor of only the rights of

7

"ingress and egress through the easements." While Mr. Harvey's reports continue to the describe the rights being taken using the exact same language, his shifting deposition testimony demonstrates his inability to articulate what rights are being taken and for what purpose.

"The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken." United States v. Miller, 317 U.S. 369, 373 (1943). It is impossible to determine the "full and perfect equivalent in money" of the property taken without properly identifying the property taken. To permit Mr. Harvey to testify to the jury as to his determination of the value of the property being taken by the Plaintiff, when his value opinions are not of the property actually being taken, would be to invite error. By failing to value the rights ACP is taking, Mr. Harvey's opinions are irrelevant and unreliable, and should not be permitted to be presented to a jury.

Federal Rule of Evidence 702 permits a witness who is qualified as an expert to testify in the form of an opinion if, "the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. Rule 702. A trial judge is under a special obligation to act as a gatekeeper to determine the admissibility of expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). Fed. R. Evid. 104(a) provides that "the court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible".

When an expert's theory, technique or opinion contains numerous flaws or errors, it fails to satisfy Daubert and is thus inadmissible. See Coleman v. Union Carbide Corp., No. 2:11-0366, 2013 WL 5461855 at * 77 (S.D. W.Va. Sept. 30, 2013) (excluding expert testimony where

the expert's opinion contained significant calculation errors, because the errors "provide[d] the gatekeeper little comfort respecting the integrity of the remainder of [the expert's] work"). See also Radiance Foundation, Inc. v. National Ass'n for the Advancement of Colored People, 27 F.Supp.3d 671, 674-76 (E.D. Va. 2013) (excluding an expert's testimony and opinions because the report and opinions were inherently unreliable and "contain[ed] numerous inaccuracies and inconsistencies regarding the topics on which [the expert] purport[ed] to opine."). The Fourth Circuit has found that "[w]hen the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court." Tyger Const. Co. Inc. v. Pensacola Const. Co., 29 F.3d 137, 144 (4th Cir. 1994). Moreover, "a court may abuse its discretion in admitting an expert opinion that conflicts directly with uncontroverted evidence of record." Price v. Mos Shipping Co., 740 F. App'x 781, 785 (4th Cir. 2018). Because Mr. Harvey's opinion regarding the property taken is in error, it is not reliable, and his testimony as to the value of the property taken should be excluded from evidence.

Without an admissible opinion as to the value of the property taken, Mr. Harvey cannot offer an admissible opinion as to just compensation, and the entirety of his opinion should therefore be excluded from evidence in this case.

### B. Mr. Harvey Improperly Bases His Opinion of the After-Take Value of the Defendants' Property on Paired Sales Which Do Not Meet the Standards of Reliability, and Fails to Account for the Impact of a Natural Gas Pipeline Easement

In order to be admissible, an expert opinion must be both relevant and reliable. Daubert, 509 U.S. at 597-99. If an expert's opinion is unreliable, it is inadmissible at trial. Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir. 2017) (quoting Daubert, 509 U.S. at 597). See also TFWS, Inc. v. Schaefer, 325 F.33d 234, 240 (4th Cir. 2003) (if an expert's methodology or opinion based thereon, fails the Daubert test, it is inadmissible). Moreover, when an expert relies

9

upon insufficient facts or data, the expert's opinion is inadmissible. See, e.g., Antekeier v. Laboratory Corp. of America, Case No. 1:17-cv-786, 2018 WL 3028609 at *1 (E.D. Va. May 1, 2018). See also Fed. R. Evid. 702.

In this case, ACP seeks to use the power of eminent domain to take property from the Defendants. The Fifth Amendment requires that, when private property is taken for a public use, just compensation must be paid. This case was brought under the Natural Gas Act, 15 U.S.C. § 717f(h), and just compensation must be awarded based on the fair market value of the property before and after the taking. See Columbia Gas Transmission, LLC v. 76 Acres, More or Less, in Baltimore and Harford Counties, Maryland, 701 Fed. Appx. 221, 228 (4th Cir. 2017). To determine the fair market value of the Defendants' properties after the taking, the jury must consider evidence of the real estate market and its response to the presence of ACP's easements and the use of those easements, including the installation and operation of a high-pressure natural gas transmission pipeline on property.

In formulating his opinions as to the value of the Defendants' property after the taking, Mr. Harvey relies only on paired sales data.[2] Paired sales analysis is not always a proper methodology for determining damages. See The Appraisal Institute, The Appraisal of Real Estate, 399 (14th ed. 2013) ("Although paired data analysis of sales or rents is a theoretically sound method, it may be impractical and produce unreliable results when only a narrow sampling of sufficiently similar properties is available."); see also Fed. R. Evid. 702 (expert opinion must be based on sufficient facts or data).

---

[2] Although not abundantly clear from his appraisal reports, Mr. Harvey confirmed during his deposition that he relied upon his paired sales analysis as the "primary" data which, in his opinion "recognized that [his] results were similar" to information published in a study sponsored by a natural gas trade association. **Exhibit D** at 130:10-17, 142:8-13. He made no attempt to confirm any of the data in the gas-industry funded study, and does not rely upon it in support of his opinion that there is no negative impact to the value of the Defendants' property caused by the Plaintiff's taking.

Paired sales are only effective when the appraiser attempts to isolate the variable being tested, and determine its market value. See Atl. Coast Pipeline, LLC v. 0.07 Acre, More or Less, in Nelson Cty., Virginia, 396 F. Supp. 3d 628, 648 (W.D. Va. 2019); see also Mountain Valley Pipeline, LLC v. 1.30 Acres of Land, No. 7:18-CV-00607, 2019 WL 4306981, at *5 (W.D. Va. Sept. 11, 2019) ("The goal of a paired sales analysis is to isolate the effect that a certain feature, such as a natural gas pipeline, has on a property's market value."); Mountain Valley Pipeline, LLC v. 1.81 Acres of Land, No. 7:19-CV-00151, 2019 WL 4007924, at *3 (W.D. Va. Aug. 23, 2019); Childers v. United States, 116 Fed. Cl. 486, 509 (2013) ("The purpose of paired sales analysis is to isolate a variable and test its impact on market value. In a paired sales analysis, an appraiser compares two properties that are *alike except for one characteristic*. Any difference in the price is attributed to the characteristic that differs, which allows the appraiser to *isolate the effect of that variable*.") (emphasis added); McCann Holdings, Ltd. v. United States, 111 Fed. Cl. 608, 626 (2013) ("in a paired sales analysis, the appraiser identifies pairs of sales that are as similar as possible for all *but one factor*. When the sales are compared, the difference in price is best explained *by that particular feature* that distinguishes the properties.") (emphasis added); The Appraisal Institute, The Appraisal of Real Estate, 398 (14th. ed. 2013) ("Paired data analysis is based on the premise that when two properties are equivalent in *all respects but one*, the value of the single difference can be measured to indicate the difference in price between the two properties.") (emphasis added).

Despite testifying that the best source of information would be properties which sold with and without the Atlantic Coast Pipeline located on them (**Exhibit D** at 146:2-7), Mr. Harvey nonetheless chose to use sales from an entirely different state which were for dissimilar uses on a project which he could not directly compare to the proposed Atlantic Coast Pipeline project. Mr.

11

Harvey also relied upon another group of paired sales but made no effort to isolate the impact of the natural gas pipeline when analyzing those sales. And his final grouping of sales relates to properties encumbered by ACP easements, which he admitted were "not synonymous with what [he was] appraising . . . in the after scenario." Id. at 145:24-146:1. Because the paired sales analysis relied upon by Mr. Harvey is methodologically flawed, the conclusions he purports to draw from the data cannot be reliable and should be excluded.

        1)        Mr. Harvey Made no Attempt to Adjust the Sales in Baltimore and Harford Counties, Maryland, to the Defendants' Property in Order to Isolate the Impact of the Existence of a High Pressure Natural Gas Pipeline

Mr. Harvey presents in his report a group of twelve paired sales from Baltimore and Harford Counties in Maryland, which are located north and east of the City of Baltimore. **Exhibit C** at "Exhibit 7", "Exhibit 10". Mr. Harvey admitted during his deposition that he prepared the Maryland sales analysis for an entirely different pipeline project, and did not revisit the data prior to using it in his appraisals in this case. **Exhibit D** at 156:24-157:9. Despite the fact that he is ostensibly seeking to understand the impact of the Atlantic Coast Pipeline on the Defendants' property, which before the taking was more than 408 acres in size, with a highest and best use of continued agriculture and rural residential use (**Exhibit C** at "Exhibit A", 12, 19), all of the properties included in Mr. Harvey's Maryland sales analysis are single family residential properties of approximately 3 acres or less. **Exhibit D** at 153:5-8; **Exhibit C** at "Exhibit 10".

In his appraisal, Mr. Harvey made no effort to use adjustments to compare the attributes of the paired sales in his Maryland sales analysis—approximately 3-acre lots improved with single family residences—with attributes of the Defendants' property—a 408+ acre working farm with multiple residences. He made no attempt to reconcile the market differences between

two suburban counties north of Baltimore, Maryland and farmland in rural Augusta County, Virginia, where the Defendants' property is located. Mr. Harvey did not know any relevant characteristics of the pipeline which encumbered his Maryland "case" sales, but nonetheless has given the opinion that it is comparable to the Atlantic Coast Pipeline. **Exhibit D** at 162:9-163:2. In fact, the *only* points of comparison which Mr. Harvey made between the pipeline north and east of Baltimore and the proposed Atlantic Coast Pipeline is that both lines are (or will be) generally underground and both are (or will be) used to transport natural gas. **Exhibit D** at 162:9-25. Because Mr. Harvey made no attempt to properly compare the information from his Maryland sales analysis to the Defendants' property, both with regard to the nature of the properties themselves and with regard to basic facts about the pipeline and the easements acquired, his methodology for applying these sales to the Defendants' property is flawed, unreliable and cannot legally form the basis of an opinion as to the value of the Defendants' property after the taking.

> 2) Mr. Harvey Selected Sales in Fairfax County Which Sold with Both an Underground Natural Gas Transmission Line and with a High Voltage Electric Transmission Line, but Made No Attempt to Isolate the Impact of the Natural Gas Line on the Sale Price

Mr. Harvey also relied upon a Fairfax County sales analysis, which includes eleven pairs of sales in Fairfax County, Virginia. **Exhibit C** at "Exhibit 7", "Exhibit 10". Like his Maryland sales analysis, the Fairfax County sales analysis relies upon comparisons of single family residential properties which are, with one exception, smaller than 5.5 acres.[3] Mr. Harvey makes no attempt to adjust—or explain his decision not to adjust—the properties in the Fairfax County sales analysis in order to compare them to the 408+ acre rural residential and agricultural property owned by the Defendants which he is purporting to value.

---

[3] The one exception is a sale of property reported to be 7.16 acres in size. **Exhibit C** at "Exhibit 10".

13

More significantly, Mr. Harvey relied upon eleven sales of single family residential properties in Fairfax County which are crossed not only by an underground natural gas transmission line, but also by an above-ground high-voltage electric transmission line. **Exhibit D** at 166:25-167:3; see also **Exhibit C** at "Exhibit 10". Mr. Harvey made no adjustment to any of these eleven sales to account for the presence of the high-voltage electric transmission line, and instead reported the difference between these eleven "case" sales and the eleven "control" sales as an overall "value difference due to HVTL/UGTL." **Exhibit C** at "Exhibit 10". A fundamental aspect of the paired sales approach is the elimination of other factors to test the market impact of an isolated variable. See, e.g., McCann Holdings, Ltd. v. United States, 111 Fed. Cl. 608, 629 (2013) ("the goal of a paired sales analysis [is to] isolate[e] and quantify[] the effect of a single variable"); see Childers v. United States, 116 Fed. Cl. 486, 512 (2013); The Appraisal Institute, The Appraisal of Real Estate, 398 (14th. ed. 2013). Mr. Harvey did not isolate one variable in his reliance on the Fairfax County sales analysis, instead claiming that he had "no ability to do that." **Exhibit D** at 167:4-16. Without properly adjusting the sales in the Fairfax County sales analysis in order to isolate the one variable for which he should have been seeking data, any conclusions drawn from the Fairfax County sales analysis as presented in the Fourth Supplemental Expert Report cannot be applied to determine the existence or absence of a market value impact on the Defendants' property due to the Atlantic Coast Pipeline project, which involves the installation of a natural gas transmission line, not a high-voltage electric power line. Without an analysis of the Fairfax County sales which isolates the impact of the natural gas pipeline itself, the opinions reached by Mr. Harvey are unreliable and therefore inadmissible.

          3)      Mr. Harvey Violates His Own Opinion by Relying On Paired Sales Data involving the ACP

Despite testifying during his deposition that he doesn't "consider an easement without the pipeline as being synonymous with what [he is} appraising here in the after scenario" (**Exhibit D** at 145:24-146:1), Mr. Harvey relied upon two paired sales in which the "case" sale was property which sold with Atlantic Coast Pipeline easements on it. **Exhibit C** at "Exhibit 7," "Exhibit 10." By his own admission these sales are not "synonymous" with his assignment to value the Defendants' property after the taking, and are not "comparable" to each other. **Exhibit D** at 146:19-147:4 (explaining that he found no sales of property along the ACP route which were appropriate to apply because "the second part of a paired sale analysis is you have to find a comparable sale, and that's where the limitation got severe. Of the two or three sales that I found along the route, I couldn't find anything that was a like kind property to compare it to."). Accordingly, his decision to rely upon sales which do not provide an appropriate point of comparison to each other or to the Defendants' property after the taking, means that his reliance on paired sales data involving the ACP is flawed and unreliable, and his testimony based on this unreliable data should not be admitted into evidence.

None of Mr. Harvey's paired sales are reliable methods of determining the impact of ACP's pipeline or determining the value of the property after the taking and so must be excluded at trial under <u>Daubert</u>. Without data on which to opine as to the value of the Defendants' property after the taking, Mr. Harvey cannot testify to an admissible opinion as to the value of the easements taken or just compensation.

### III.    Conclusion

Without admissible evidence as to the rights and property taken by ACP and the impact of ACP's taking on the market value of Defendants' property, Mr. Harvey's opinions and testimony should be excluded from the just compensation trial. Because he applied unreliable and flawed methodology, ignored or neglected critical data, and performed incorrect and unreliable analysis, the Court should not permit Mr. Harvey to testify before the jury at trial, and should grant the Defendants' motions barring ACP from offering testimony or other evidence from Mr. Harvey in this case.

Respectfully submitted,

**BONNIE V. RALSTON, TRUSTEE OF THE BONNIE V. RALSTON TRUST AGREEMENT DATE JUNE 13, 2009**

**CARSON R. RALSTON, TRUSTEE OF THE BONNIE V. RALSTON TRUST AGREEMENT DATE JUNE 13, 2009**

/s/
_____
Stephen J. Clarke (VA Bar #: 72835)
WALDO & LYLE, P.C.
301 West Freemason Street
Norfolk, VA 23510
Telephone: (757) 622-5812
Facsimile: (757) 622-5815
sjc@waldoandlyle.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and exact copies of the foregoing Memorandum in Support of Motion *in Limine* to Exclude the Testimony of William C. Harvey, II have been served upon the following via the CM/ECF system on this 20th day of February, 2020:

Richard D. Holzheimer, Jr. (VA Bar #: 40803)
John D. Wilburn (VA Bar #: 41141)
N. Patrick Lee (VA Bar #: 78735)
Kang He (VA Bar #: 89237)
James J. Holt (VA Bar #: 78601)
Keith J. Minson (VA Bar #: 89417)
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102

/s/
Stephen J. Clarke (VA Bar #: 72835)
WALDO & LYLE, P.C.
301 West Freemason Street
Norfolk, VA 23510
Telephone: (757) 622-5812
Facsimile: (757) 622-5815
sjc@waldoandlyle.com