IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| ATLANTIC COAST PIPELINE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> 11.18 ACRES, MORE OR LESS, IN AUGUSTA COUNTY, VIRGINIA, LOCATED ON PARCEL IDENTIFICATION NO. 40-11, IDENTIFIED AS TRACT ONE (TAX MAP NO. 40-11) IN INSTRUMENT #180002522; LOCATED ON PARCEL IDENTIFICATION NO. 40-13, IDENTIFIED AS TRACT TWO (TAX MAP NO. 40-13), IN INSTRUMENT #180002522; <br><br> and <br><br> BONNIE V. RALSTON, TRUSTEE OF THE BONNIE V. RALSTON TRUST AGREEMENT DATED JUNE 13, 2009, <br><br> and <br><br> CARSON R. RALSTON, TRUSTEE OF THE BONNIE V. RALSTON TRUST AGREEMENT DATED JUNE 13, 2009, <br><br> Defendants. | Civil Action No.: <br> 5:18cv60 |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF WILLIAM C. HARVEY, MAI

The Defendants and Landowners in this case, Bonnie V. Ralston, Trustee of the Bonnie V. Ralston Trust Agreement dated June 13, 2009, and Carson R. Ralston, Trustee of the Bonnie V. Ralston Trust Agreement dated June 13, 2009, have moved to exclude the testimony of William C. Harvey, MAI, the real estate appraiser designated by the Plaintiff, Atlantic Coast Pipeline, LLC ("ACP"), on the basis that his report—and the opinions and bases contained therein—is deeply flawed and his methodology unreliable. In opposition, ACP asks the Court to ignore the actual conclusions and opinions reached by Mr. Harvey in favor of adopting ACP's

strained opinions thereof. Because Mr. Harvey did not value the property being taken, he cannot have a reliable—and therefore admissible—opinion of just compensation. And because Mr. Harvey's conclusions regarding the value of the Landowners' property remaining after the taking are based on insufficient data which do not account for the actual impact of the easement rights being taken in this matter, his opinion of the value of the Landowners' property after the taking must also be excluded.

I.  **Mr. Harvey did not Value the Property Taken**

In its Response (ECF No. 70), ACP characterizes the Landowners as "grasping at straws" because they simply pointed out that Mr. Harvey did not value the rights actually being taken in the Third Amended Complaint. Unfortunately for ACP, Mr. Harvey's deposition testimony on the topic reveals his own confusion about what rights are being taken. Because Mr. Harvey does not understand what is being taken, the only way his opinion about the value of the property taken could be admissible is if he happened to guess correctly. His report (ECF No. 59-3) and his deposition testimony (ECF No. 59-4) reveal this is not the case.

Under Rule 71.1 of the Federal Rules of Civil Procedure, ACP is permitted to define the scope of the rights being taken in the Complaint. In fact, ACP has filed four complaints in this matter, but only in the Third Amended Complaint (ECF No. 40) did ACP make a significant change to its definition of the rights being taken. This change was made as a result of an agreement between the parties which also resulted in ACP eliminating the taking of a permanent access easement over a portion of the Landowners' property in this case.

It appears, however, that either Mr. Harvey was not informed about the specific changes to the rights being taken in the Third Amended Complaint, as compared to the Second Amended Complaint or any of ACP's earlier Complaints, or that he neglected to ask for specific

2

instructions from his client as to what rights were being valued. Either way, the result is that Mr. Harvey's fifth appraisal report (ECF No. 59-3), which ACP has contended will form the basis for his expert testimony at trial in this matter, incorrectly describes the rights being taken, and his deposition testimony only adds further confusion.[1]

ACP now argues that the *change it made* to the Third Amended Complaint was superfluous and unnecessary, and that it still is taking the right "of ingress and egress to and from the easements." However, ACP recently acknowledged in a separate filing that the Third Amended Complaint had the effect of changing the property being taken. After initially filing a Declaration in support of its Motion for Partial Summary Judgment (a copy of which is attached hereto as Exhibit A) which stated that ACP was taking "the right of ingress and egress to and from and through the Easements," ACP moved this Court to file a corrected Declaration, stating, in its Motion to Amend Exhibit (ECF No. 68) that the original declaration "contains an error in paragraph 13" and specifically that "Paragraph 13 of the Declaration does not match the rights being condemned in the Third Amended Complaint." Motion (ECF No. 68), at 2. The corrected Declaration now describes ACP as taking "the right of ingress and egress through the Easements." Declaration of Land Agent (ECF No. 61-1), at 13.

ACP complains that the Landowners focus solely on three words in Mr. Harvey's appraisal report, but this is not correct. What the Landowners ask the Court to focus on is Mr. Harvey's utter inability to describe the rights being taken in any consistent manner. During his deposition, Mr. Harvey was quite confused about what property is being taken and what he was

---

[1] ACP argues that Mr. Harvey should not be excluded because the Landowners' expert witness, Mr. Gruelle, described the rights being taken to include the right of ingress and egress to and from and through the easements. Yet Mr. Gruelle did not provide numerous points of contradictory testimony as to his appraisal of those rights during his deposition. It is Mr. Harvey's report coupled with his shifting and contradictory deposition testimony which demonstrates the unreliability of his testimony.

3

appraising. After admitting that his report did not include a direct quote from the Third Amended Complaint with regard to the description of the rights of ingress and egress, Harvey Depo. Tr. (ECF No. 59-4) at 97:6-10, Mr. Harvey then answered, when asked to confirm if one of the things he appraised was ACP's acquisition of the right of ingress to and from the easements, "through the easement," correcting the question. Id. at 97:11-15.

He then testified that "it's my interpretation that I properly reflected the rights" being taken and referenced language in Paragraphs 19 and 21 of the Third Amended Complaint. Id. at 98:5-10. Asked to clarify, he testified that he appraised ACP's acquisition of the right of ingress and egress to and from the easements "only for the purpose of restoration" and that "[i]t's through the easement that they would actually maintain the pipeline." Id. at 98:14-16. He restated that position again for emphasis. Id. at 98:17-25. Moments later, Mr. Harvey then appeared to contradict himself, testifying that he valued the right of ingress and egress to and from the easements for purposes which are "not exclusive to restoration." Id. at 100:25.

Mr. Harvey's shifting deposition testimony reveals his lack of understanding of what rights he was valuing. Combined with his report, it is unclear what rights Mr. Harvey intends to testify he appraised at trial, but it is not the rights being taken in the Third Amended Complaint. As his deposition testimony demonstrates, Mr. Harvey does not have a firm understanding on what property he was valuing. Without such an understanding, his testimony on the subject is unreliable. Therefore, the Court should exclude Mr. Harvey from testifying as to the value of the property being taken.

## II. Mr. Harvey Relied Upon Data He Admits Is Unreliable

ACP tries to defend Mr. Harvey's opinions as they relate to the value of the Landowners' property after the taking, but in the end, ACP cannot avoid the fact that Mr. Harvey relied

4

exclusively on "paired sales" studies which he prepared for different pipeline projects and which have no connection to the Landowners' property beyond the fact that they involve a natural gas transmission line.

Most significantly, Mr. Harvey claims that a study he prepared which compares the sale of properties with both high voltage transmission lines *and* a natural gas pipeline to properties without either, is evidence of the specific impact of the taking and use of natural gas pipeline easements over the Landowners' property. Because Mr. Harvey made no attempt to isolate the impact of the specific condition which he was tasked with measuring, his study from Fairfax County cannot, as a matter of law, be reliable evidence of the impact of the taking and use of natural gas pipeline easements alone.

In defense of Mr. Harvey's flawed methodology, ACP argues that because Mr. Harvey was unable to find good data, he should be allowed to testify to whatever data he did find. To put it mildly, this argument would eviscerate the standard of Fed. R. Evid. 702, as applied in Daubert and its progeny. Under ACP's formulation, an expert need only say that he tried to find applicable data and was unable to, so he used the data he could find, and his opinion would be rendered reliable and admissible. This is not the requirement of Rule 702, and it ignores the trial court's function as gatekeeper, tasked with determining—before trial—if the expert applied proper methodology or relied upon sufficient data. See, e.g., Daubert v. Merrell Dow Pharma., Inc., 509 U.S. 579, 592-93 (1993).

Because Mr. Harvey did not even attempt to compare properties in his Fairfax County study whose only difference was the existence (or not) of a natural gas pipeline easement, any conclusions he may have drawn from that study are simply inapplicable to the determination of the impact of ACP's taking and use of natural gas pipeline easements across the Landowners'

5

property. Indeed, ACP admits that a proper paired sales analysis requires the appraiser to "identif[y] pairs of sales that are as similar as possible *for all but one factor*." Response Brief (ECF No. 70), at 7. Yet even after admitting that "the pairs would be property with an interstate gas pipeline easement and a similar property without such an easement," id. at 8, ACP nonetheless asks the Court to overlook Mr. Harvey's reliance on a paired sales study which does not compare similar properties—one "with an interstate gas pipeline easement and [one] without such an easement." The Court should decline ACP's invitation to hold that a paired sales study which *does not* test for the difference in value attributable only to the presence of a natural gas transmission line is admissible evidence of the difference in value attributable only to the presence of a natural gas transmission line to be installed on the Landowners' property.

ACP claims that because "Mr. Harvey could not adjust the prices [in Fairfax County] for the effect of the transmission line" he should be permitted to bolster his faulty conclusions from Fairfax County by relying on a study he prepared for properties north of Baltimore, Maryland. Id. at 13. The Court should not permit Mr. Harvey to testify to inadmissible data simply because he relied on other, unrelated data. Indeed, as Mr. Harvey concluded in his report, proximity to a transmission line may be objectionable, benign or even desirable. Harvey Report (ECF No. 59-3) at 27. And his conclusions from the Fairfax County demonstrate a wide divergence of valuation differences which he attributes to the presence of both high voltage power lines and natural gas transmission lines. Id. at Exhibit 7 (range between 12.5% diminution and 16% enhancement). And because he made no effort to extract what impact was attributable to the natural gas pipeline as opposed to what impact was attributable to the high voltage power lines, he cannot say whether, for example, the natural gas transmission line caused a diminution in

6

value which was, in some instances, counteracted by enhancement resulting from the high voltage transmission line, or vice versa.

Mr. Harvey simply did not do the work necessary to draw any reliable conclusion about the impact of a high pressure natural gas transmission line, and therefore his reliance on data which does not isolate the impact of the natural gas easements being taken is faulty and should be rejected by the Court. And because he has not opined—and cannot opine—that the Maryland study is comparable to the Fairfax County study, he cannot simply use data from a different region of the country as a justification for using improper and incomplete data from Fairfax County.

Finally, although he testified in his deposition that the sale of property with an easement but without a pipeline is not applicable to his appraisal assignment, Harvey Depo Tr. (ECF No. 59-4), at 145:24-146:1, Mr. Harvey nonetheless purports in his report to rely upon two paired sales involving properties encumbered by ACP easements. Mr. Harvey's own testimony is that these two sale pairs involving ACP easements are not comparable. Accordingly, by his own admission they should not be admitted as evidence of the impact of the easements being taken on the value of the Landowners' property.

ACP claims that the Landowners' objections all go to the weight of Mr. Harvey's testimony, but the Landowners' claim is that Mr. Harvey applied flawed methodology, failed to account for the actual condition he was tasked with measuring—the presence of a natural gas pipeline and associated easements—and relied on data which are not comparable and which, as a matter of law, cannot form the basis for expert conclusions about the specific impact of the easements being taken in this case. Accordingly, the Court should exercise its gatekeeping role

and exclude Mr. Harvey from offering testimony as to the value of the Landowners' property after the taking, because he has no admissible basis for reaching an opinion as to that value.

### III. Mr. Harvey's Opinions Are Not Sufficiently Reliable

Mr. Harvey's opinions in this case are the product of flawed methodology, a misunderstanding of the rights being appraised, and a failure to apply appropriate appraisal techniques to the appraisal problem in front of him. Therefore, the Court should, under Fed. R. Evid. 702, rule that Mr. Harvey's opinions are flawed and unreliable, and bar him from offering expert testimony in this case.

Respectfully submitted,

**BONNIE V. RALSTON, TRUSTEE OF THE BONNIE V. RALSTON TRUST AGREEMENT DATED JUNE 13, 2009**

**CARSON R. RALSTON, TRUSTEE OF THE BONNIE V. RALSTON TRUST AGREEMENT DATED JUNE 13, 2009**

/s/
Stephen J. Clarke (VA Bar #: 72835)
Russell G. Terman (VA Bar #: 93804)
WALDO & LYLE, P.C.
301 West Freemason Street
Norfolk, VA 23510
Telephone: (757) 622-5812
Facsimile: (757) 622-5815
sjc@waldoandlyle.com
rgt@waldoandlyle.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and exact copies of the foregoing Reply Memorandum in Support of Defendants' Motion *in Limine* to Exclude the Testimony of William C. Harvey, MAI, have been served upon the following through the Court's Electronic Filing System on this 12th day of March, 2020:

Richard D. Holzheimer, Jr. (VA Bar #: 40803)
John D. Wilburn (VA Bar #: 41141)
N. Patrick Lee (VA Bar #: 78735)
Kang He (VA Bar #: 89237)
James J. Holt (VA Bar #: 78601)
Keith J. Minson (VA Bar #: 89417)
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102

/s/
Stephen J. Clarke (VA Bar #: 72835)
Russell G. Terman (VA Bar #: 93804)
WALDO & LYLE, P.C.
301 West Freemason Street
Norfolk, VA 23510
Telephone: (757) 622-5812
Facsimile: (757) 622-5815
sjc@waldoandlyle.com
rgt@waldoandlyle.com