# EXHIBIT A

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
**Harrisonburg Division**

| | |
|---|---|
| ATLANTIC COAST PIPELINE, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> 11.18 ACRES, MORE OR LESS, IN AUGUSTA COUNTY, VIRGINIA, *et al.*, <br><br> *Defendants*. | Case No. 5:18-cv-00060-NKM-JCH |

## DECLARATION OF LAND AGENT

I, David Aman, declare the following under the penalty of perjury:

1. I am over the age of 18.

2. I am familiar with the books and records of Atlantic Coast Pipeline, LLC ("Atlantic") with respect to the matters at issue herein, and I am authorized to make this Declaration. I have personal knowledge of the facts stated below.

3. I serve as a Land Agent Consultant for the Atlantic Coast Pipeline project ("ACP Project").

4. In my capacity as a Land Agent Consultant, I am familiar with the certificate of public convenience and necessity ("Certificate") issued by the Federal Energy Regulatory Commission ("FERC"), the easement rights that Atlantic seeks to condemn in this action, and the negotiations that took place between Atlantic and the defendants named in this action (collectively, the "Owners") for the purchase of those easement rights, which are more fully described in the Complaint.

## ATLANTIC COAST PIPELINE

5. Atlantic is an interstate natural gas company that is subject to the jurisdiction of FERC.

6. Atlantic is in the process of constructing the ACP Project, a 600-mile underground pipeline for the purpose of transporting natural gas from West Virginia to Virginia and North Carolina. The ACP Project will serve multiple public utilities and is necessary to satisfy the growing energy needs of residents and businesses in North Carolina and Virginia. The ACP Project will be approximately 42 inches in diameter in West Virginia and Virginia, and 36 inches in diameter in North Carolina. Certain extensions of the ACP Project will measure 20 inches in diameter from Northampton County, North Carolina to the City of Chesapeake, Virginia and 16 inches in diameter in Brunswick County, Virginia and Greensville County, Virginia.

7. On September 18, 2015, Atlantic filed with FERC an application for a certificate of public convenience and necessity, FERC Docket No. CP15-554-000, in which Atlantic sought permission to construct and operate the ACP Project. On October 13, 2017, FERC issued a Certificate authorizing Atlantic to construct and operate the ACP Project.

## PROPERTY AND EASEMENTS

8. Atlantic seeks to acquire certain easements permanent easements (the "Permanent Easements") and temporary easements (the "Temporary Easements") (collectively the "Easements") on the subject properties (the "Property") to construct the portion of the ACP Project that crosses Augusta County, Virginia. These Easements are necessary for constructing, maintaining, operating, altering, testing, replacing, and repairing the ACP Project.

9. The Easements to be taken are described in the Third Amended Complaint and its accompanying exhibits, particularly Exhibits 4-A and 4-B, which depict the FERC-approved route and dimensions.

10. The Owners did not consent to Atlantic's entry onto the Property for boundary surveys. After the filing of the original Complaint, Atlantic acquired additional boundary information for the Property, which was gathered from neighboring parcels. That updated boundary information was incorporated into the Third Amended Complaint and its accompanying exhibits, particularly Exhibits 4-A and 4-B.

11. The Permanent Easement includes a permanent and exclusive easement and right-of-way to construct, operate, maintain, replace, repair, remove or abandon the ACP Project and appurtenant equipment and facilities, as well as the right to change the location of the installed pipeline within the area of the Permanent Easement as may be necessary or advisable.

12. The Temporary Easement will enable Atlantic to construct the ACP Project and engage in restoration or clean-up activities. The Temporary Easement is requested as of the date of authorized entry onto the Property and its use is required until all work, including restoration, is complete. The Temporary Easement will be effective and condemned for a period not to exceed five (5) years following Atlantic's possession of the Easements.

13. Atlantic also seeks to acquire the right of ingress and egress to and from and through the Easements; the right to transport pipe, vehicles, machinery, persons, equipment, or other materials to and from and through the Easements.

14. Atlantic also seeks the right to fell trees and clear brush or other vegetation as necessary or convenient for the safe and efficient construction, operation, or maintenance of the ACP Project or to maintain safe and efficient access to and from the ACP Project.

15. The Owners shall retain the right to use the Property in any manner that will not interfere with the use and enjoyment of Atlantic's rights under the Easements. Specifically, the Owners shall not, without the prior written consent of Atlantic: (a) change the depth of cover or otherwise undertake earthmoving or construction within the Permanent Easement; (b) place or permit to be placed any temporary or permanent structure or obstruction of any kind, including but not limited to buildings, swimming pools, sheds, concrete pads, mobile homes, trees, telephone or electric poles, water or sewer lines, or similar structures, within the Permanent Easement; (c) store or operate any heavy equipment in the Permanent Easement, except the use of typical farming equipment; and (d) construct ponds or lakes in a manner that would flood the Permanent Easement.

## NEGOTIATIONS

16. Atlantic has negotiated with the Owners and has made several efforts to acquire the Easements by contract.

17. In this case, Atlantic began negotiations to acquire the Easements in 2016.

18. Atlantic sent the Owners numerous written offers to acquire the Easements. These offer letters are dated December 2016, May 2017, August 2017, January 2018, and March 2018.

19. Further, Atlantic sent the Owners a final written offer dated March 16, 2018. This final written offer contains Atlantic's determined "market value" for the property, Atlantic's final offer amount for the easements to be taken, and a plat with the FERC-approved route and dimensions.

20. Between the start of negotiations and the date of the final written offer, Atlantic also negotiated with the Owners by telephone and electronic mail in an attempt to acquire the Easements by contract.

21. The Owners have not accepted any of the offers made by Atlantic. Further, the Owners have not made any counteroffers or demands. Thus, Atlantic has been unable to acquire the Easements by contract.

22. To date, Atlantic and the Owners have been unable to agree on the compensation to be paid and the terms of the Easements.

23. The Owners' appraisal report claims that the value of the Easements exceeds $3,000.00.

**\*\*\* SIGNATURE ON THE NEXT PAGE \*\*\***

On this day, February 20, 2020, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

David Aman